# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SALVATORE M. BOMBARDIERE, SR.,**

    **Plaintiff,**

v.                                               **CIVIL ACTION NO. 1:13cv172**

**RYAN ENVIRONMENTAL, LLC,**
**CLAYTON RICE, JAMES CAVA,**
**AL ANDERSON, JESSICA EDDY,**
**JOHN KOON, HUNTER WAYNE REED,**
**JOSEPH BRUNNER, MARVIN HAROLD, and**
**UNKNOWN BOARD MEMBERS OF**
**RYAN ENVIRONMENTAL LLC,**

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

On July 19, 2013, Plaintiff, proceeding *pro se*, filed a Complaint in this Court against the above-named defendants [DE 1]. On August 6, 2013, all Defendants, through counsel, filed a combined Motion to Dismiss and Memorandum in Support [DE 37 and 38, respectively]. Defendants claim that this Court lacks subject matter jurisdiction over Plaintiff's Complaint, and that Service of Process was improper as to all defendants.

Because the plaintiff is proceeding *pro se*, the Court sent him a Roseboro Notice, advising him of his right to file a response, and to alert him to the fact that his failure to respond could result in the entry of an order of dismissal against him. Davis v. Zahradrich, 600 F.2d 458, 460 (4th Cir. 1979); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

Plaintiff filed his "Response to Defendants' Motion to Dismiss and Brief in Support of Plaintiff's Motion for a Restraining Order" on August 15, 2013 [DE 46]. Defendants filed their Reply on August 22, 2013 [DE 53]. The matter was referred to the undersigned United States

Magistrate Judge by United States District Judge Irene M. Keeley by Order entered July 23, 2013 [DE 14].

## A.  BACKGROUND

In summarizing the facts, the Court resolves all disputed factual issues in the plaintiff's favor. Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994).  Plaintiff was hired at Ryan Environmental in March 2011.  By January 2012, all the other employees in his department had left the company, and defendant Al Anderson hired new employees, including Joseph Brunner, Marvin Harold, Jessica Eddy, and Hunter Reed.  Plaintiff had never been written up for a violation of company policy, until April 16, 2013.  Ryan sent those new employees to classes and paid for them to obtain certain licenses, but did not provide the same to Plaintiff.  Plaintiff was nevertheless expected to help mentor these new employees.

In his Complaint, Plaintiff next alleges a long list of serious violations of company policy by other employees who were not fired for those violations.

Plaintiff next alleges how the individual defendants conspired to wrongfully terminate him. In the process, Plaintiff alleges the defendants created a hostile work environment for him. Plaintiff alleges he was in a relationship with Defendant Eddy.  He alleges the relationship was commented on derisively by the other defendants.  Plaintiff's home was broken into on April 3, 2013.  A neighbor called police.  It was somehow determined that Defendant Eddy had broken into the house. The police encouraged Plaintiff to file charges and a domestic violence petition against Eddy, but he did not do so.  He did call Defendant Rice, as the police suggested, because Plaintiff and Eddy were co-workers.  Rice, Anderson, Brunner, and Reed met with Eddy over the next two days, but no one spoke with Plaintiff.

During the next week another employee, Mark Howard, verbally abused Plaintiff, cussing and screaming at him, because he wanted to use a specific pressure washer which was already hooked up to Plaintiff's truck. Defendant Koon thought that was funny and had Plaintiff disconnect the pressure washer from his truck.

On April 12, 2013, Plaintiff's job was shut down and he was taken to United Hospital Center for chest pains, numbness in his arms and legs, anxiety, and depression. Hospital personnel advised Plaintiff to remain overnight for more tests and monitoring, but Plaintiff refused because he was scheduled to work the next day. He was also referred for counseling at United Summit Center.

On April 15, 2013, Plaintiff was taken to an Urgent Care facility for chest pains and numbness. He was diagnosed with anxiety and depression, and prescribed medication for depression. He was again referred to United Summit Center for counseling.

On August 18, 2013, Plaintiff was physically attacked by Defendant Reed's sparring partner's father, Dave Cogar. That same day Defendant Koon cursed and screamed at Plaintiff in front of other employees for complaining about the attack. Plaintiff was fired that same day. Cogar was not even written up.

Plaintiff next lists incidents that occurred involving Ryan employees after his termination, including a conversation with Defendant Koon, in which Koon stated that Plaintiff had really been fired due to his relationship with Eddy, implying that Koon was involved with Eddy. Koon also informed Plaintiff he had spoken with Plaintiff's new employer at Waste Management, stating "he (Plaintiff) wouldn't be there long either."

On June 6, 2013, Plaintiff received his first and final write-up from Waste Management. It was written by the individual to whom Koon said he had spoken. That same day Plaintiff called Defendant Rice, asking for a meeting with management at Ryan. He also asked to be left alone. He

3

further reported Koon's remarks to him. Rice said he would talk to Defendant Eddy. Later that same day Eddy filed a domestic violence complaint against Plaintiff.

On June 11, 2013, Plaintiff posted a statement on facebook, regarding how well he had treated Eddy, and how she would want him back someday. Shortly thereafter, Defendants Reed and Harold commented on the post, both stating it was "inappropriate."

On July 3, 2013, a hearing was held in Marion County Family Court regarding Eddy's domestic violence petition against Plaintiff. At that hearing Eddy informed the Family Court Judge that her co-workers had urged her to file the petition, that Reed was supposed to come to testify but had not, and that she did not wish to see Plaintiff locked up or harmed. The Family Court Judge dismissed the petition, finding there was no proof.

On July 8, 2013, Plaintiff sent Defendants a "Notice of Intent," explaining his position and requesting a meeting to avoid a lawsuit.

Two days later, Defendant Rice wrote back to Plaintiff as follows:

> Sal,
>
> I appreciate you reaching out, but given your threatening letters, neither Jim or I see the necessity to meet with you. Your relationship with Ryan was terminated for cause, which we discussed with you on your last day with Ryan. I respectfully request you refrain from contacting any employee at Ryan Environmental, LLC concerning business matters and legal threats.

Complaint at page 8.

On July 12, 2013, Plaintiff was terminated from Waste Management by Bobby Elder, another former employee of Ryan.

4

Plaintiff further alleges that Defendant Eddy has contacted Workers' Compensation "in an effort to further cause petitioner ("Plaintiff") additional emotional and finical (sic) burdens." (Complaint at page 8).

Plaintiff demands damages in the amount of ten million dollars ($10,000,000.00); a cease and desist order on any/all activity/ work ongoing by Ryan Environmental LLC and any parent or subsidiary companies; and that the Court order an investigation into the hiring, firing and other business practices of Ryan Environmental, LLC.

### B.  DISCUSSION

Defendants base their motion to dismiss on lack of subject matter jurisdiction and improper service of process.  Plaintiff expressly bases jurisdiction on "Federal Question  28 USC 1331," and alleges a Civil Rights Violation [DE 1 and attachment 1].

**1.    Subject Matter Jurisdiction**

Defendants first argue that this Court lacks subject matter jurisdiction to hear this case.  It is a fundamental precept that federal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statue."  In re Bulldog Trucking, Inc., 147 F.3d 347 (4th Cir. 1998)( "A primary incident of that precept is our duty to inquire, *sua sponte*, whether a valid basis for jurisdiction exists, and to dismiss the action if no such ground appears."). Before this Court may consider the case, it must therefore determine whether it has subject matter jurisdiction over the action. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998)(jurisdiction cannot be assumed even where legal issues could be readily resolved or prevailing party on merits would be the prevailing party where jurisdiction is denied). "If the Court determines at any time that it lacks subject-matter jurisdiction, the court must

5

dismiss the action." Fed.R.Civ.P.12(h)(3). Once subject matter jurisdiction has been challenged, it is the plaintiff's "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the court or by the parties, and, if lacking, renders the district court wholly unable to rule on any matter in controversy.

**a. Diversity Jurisdiction**

Plaintiff does not allege diversity of citizenship as grounds for jurisdiction; however, in his Response, he states that his claim is in excess of seventy-five thousand dollars ($75,000.00). The Court will therefore briefly address diversity jurisdiction in an abundance of caution. To invoke the district court's diversity jurisdiction, the parties must be completely diverse, meaning that none of the plaintiffs shares state citizenship with any of the defendants, and the amount in controversy must exceed the jurisdictional threshold. 28 U.S.C. section 1332; Mayes v. Rapoport, 198 F.3d 457 (4th Cir. 1999). The plaintiff wishing to bring suit in federal court has the burden or proving complete diversity and the requisite amount in controversy. See Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765 (4th Cir. 1991). Plaintiff does request relief in the amount of ten million dollars, far above the jurisdictional threshold. Plaintiff, however, is a resident of West Virginia, as are all, or at least some of the defendants. According to the West Virginia Secretary of State's Business Organization Website, Ryan Environmental is a West Virginia-based Limited Liability Company ("LLC"). Defendant Rice is its named Manager and Organizer, with personal and office addresses all in West Virginia. Even if every defendant was not a West Virginia resident, one or more of them are, and thus are not completely diverse. Accordingly, subject matter jurisdiction does not exist pursuant to 28 U.S.C. section 1332.

6

### b. Federal Question Jurisdiction

Plaintiff does claim jurisdiction arises under 28 U.S.C. section 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." Defendants argue that in his Complaint Plaintiff does not even mention any federal statute. Defendants are correct. Plaintiff does not cite or even mention any federal law in his Complaint to support a basis for federal question jurisdiction. There is no claim that Plaintiff is a member of a protected class or that alleged wrongful acts were a result of discrimination pursuant to federal law. Instead, the Complaint, even when taken completely as true, alleges Plaintiff was treated differently than other employees, mostly based on his relationship with his co-worker, Eddy (now a defendant). "[I]f the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of section 1331." See, i.e., <u>Dixon v. Coburg Dairy, Inc.</u>, 369 F.3d 811 (4th Cir. 2004).

In an apparent effort to correct the failure to properly allege federal jurisdiction, Plaintiff, in his Response to the Motion to Dismiss, states that his claims arise under Title 18, U.S.C. Section 241, Conspiracy Against Rights; Title VII; the First Amendment; the Fourth Amendment; the Fifth amendment; the Fourteenth Amendment; and the Americans with Disabilities Act. Without naming the Acts itself, Plaintiff appears to also allege his claims arise under the Age Discrimination Act.

### i. 18 U.S.C. Section 241

Plaintiff begins his Response with a "Brief and Statement of Facts in Support of Plaintiff's Motion for a Restraining Order on Defendants," citing Title 18 U.S.C. Section 241. The undersigned is unsure whether this argument is also meant to apply to Plaintiff's Response to the Motion to Dismiss. Regardless, to the extent Plaintiff seeks to assert a claim under this federal

statute, such claims must be dismissed, as this federal criminal statute does not authorize a private right of action. See Johnson v. Thomas, 2011 WL 1344008 (E.D.N.C. 2011)("none of the criminal statutes upon which plaintiff relies authorize a private cause of action"). Shahin v. Darling, 606 F. Supp. 2d 525 (D. Del. 2009)(dismissing civil claims brought by plaintiff pursuant to 18 U.S.C. sections 241 and 242 because neither criminal statute authorizes a private cause of action); Massad v. Greaves, 554 F. Supp. 2d 163 (D. Conn. 2008)("federal criminal statutes cannot provide plaintiff with an implied civil cause of action to plead"). Rather, the decision of whether to prosecute under these statutes, and what criminal charges to bring, generally rests with the prosecutor. Shahin, supra, at 538).

Plaintiff's Motion for a Restraining Order (contained within his Response) pursuant to Section 241 must therefore be denied.

**ii. Title VII, Age Discrimination Act, and Americans with Disabilities Act.**

While not mentioned in his Complaint, Plaintiff in his Response asserts a claim under Title VII of the Civil Rights act of 1964, 42 U.S.C. section 2000e *et seq.*, ("Title VII") which makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges or employment, because of such individual's race, color, religion, sex, or national origin." Plaintiff states he was "the only male of Italian/Latino descent." Even if the wrongful acts complained of were "because" Plaintiff was of Italian/Latino descent, this claim must still fail.

To bring a civil action under Title VII, a plaintiff must exhaust his administrative remedies by first bringing a charge with the Equal Employment Opportunity Commission ("EEOC"). Smith v. First Union Nat'l, Bank, 202 F.3d 234 (4th Cir. 2000). The Fourth Circuit has instructed that "[a]

plaintiff's EEOC charge defines the scope of [his] subsequent right to institute a civil suit." Id. The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible. See EEOC v. American Nat'l Bank, 652 F.2d 1176 (4th Cir. 1981). Rather than "a formality to be rushed through," this exhaustion requirement is "an integral part of the Title VII enforcement scheme." Chacko v. Patuxent Inst., 429 F.3d 505 (4th Cir. 2005). Further, the requirement places the resolution of employment discrimination disputes initially in the hands of the EEOC. "Allowing this agency the first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" Chris v. Tenet, 221 F.3d 648 (4th Cir. 2000).

Plaintiff also cites Title I of the Americans with Disabilities Act, 42 U.S.C. 12111, *et seq*. ("ADA"). The basis for this claim appears to be as follows:

> [P]eople that should have helped Plaintiff worsened to [sic] his medical condition, by not giving him the time off work or being supportive of Physician's diagnosis of exhaustion, fatigue, anxiety and depression.
>
> April 12, 2013, Plaintiff's job was shut down and Plaintiff was taken to the Emergency room at United Hospital Center by defendant Al Anderson, for chest pains and numbness in his extremities. Plaintiff was hooked up to a heart monitor given nitro glycerin to bring his pain under control. Plaintiff diagnosed with anxiety, exhaustion, depression, Plaintiff was requested overnight stay for monitoring and more testing the next day. Plaintiff refused over night stay because Plaintiff was scheduled to work the next day and feared getting fired. United Hospital Center diagnosed Plaintiff with anxiety, exhaustion, depression, and was also referred to United Summit Center for counseling[.] Defendant Al Anderson was present during this discussion and diagnoses.

Any claim under the ADA must also fail, however, for the same reason Plaintiff's Title VII claim fails. Modeled after Title VII, the ADA incorporates that statute's enforcement procedures,

9

including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court. See Sydnor v. Fairfax County, VA., 691 F3d 591 (4th Cir. 2012). As already discussed, Plaintiff has not filed a charge with the EEOC.

Plaintiff also appears to assert a claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. section 621, *et seq.*, ("ADEA"), by stating he was "a noted member of the Geo Department over the age of fifty other than the former owner Defendant Al Anderson . . . ." Any such claim, however, again fails for the same reasons any Title VII or ADA claim fails. Under the ADEA, a plaintiff must file a charge of discrimination with the EEOC prior to filing suit. Jones v. Calvert Group, Ltd., 551 F.3d 297 (4th Cir. 2009).

The undersigned United States Magistrate Judge finds Plaintiff has failed to exhaust his remedies under Title VII, The ADA or the ADEA, and the Court therefore lacks subject matter jurisdiction over such claims.

### iii. First, Fourth, Fifth, and Fourteenth Amendment Claims

Plaintiff claims the defendants violated his First Amendment rights by interfering with his and his former companion (Defendant Eddy's) "right to association both personally and professionally." (Response at page 7). Plaintiff also claims the defendants violated his Fourth Amendment rights because "in essences people should feel secure at work it is their home away from home and the people considered family for the most part. Plaintiff definitely did not people that should have helped Plaintiff worsened to his medical condition, by not giving him the time off work or being supportive of Physician's diagnosis of exhaustion, fatigue, anxiety and depression." [sic] (Response at 8-9). He also claims the defendants violated his Fifth and Fourteenth Amendment rights "for Life, liberty, property, and pursuit of Happiness."

10

"The First and Fourteenth Amendments are limitations on state action, not on action by the owner of private property used for private purposes." Central Hardware Co. v. N.L.R.B., 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed. 2d 122 (1972). Defendant Ryan is a privately owned, privately owned business. Actions by a private employer or its employees are not state actions such as are prohibited by the First and Fourteenth Amendments. "The Fourth Amendment protects against unreasonable searches and seizures by Government officials and those private individuals' action as 'instruments or agents' of the Government." See U.S. Const. Amend. IV; United States v. Jacobsen, 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984)(holding that the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." Likewise, in order for a taking to violate the Fifth Amendment, the taking must be at the hands of the government. As the Fourth Circuit recently noted in Shirvinski v. U.S. Coast Guard, 673 F.3d 308 (4th Cir. 2012), "'[o]ur Constitution deals with the large concerns of the governors and the governed.' It does not 'purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.'" Id. at 316 (quoting Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). Therefore these claims also must fail.

The undersigned notes Plaintiff states: "The relevant regulations are the Personal Protective Equipment at Work Regulations 1992." He continues to cite "Section 9 of the Health and Safety at Work etc. Act 1974" regarding his having been "written up" for failure to provide personal protective equipment for crew members on a well location. The undersigned could not find any such Act or regulations under United States Law. The sole Act and regulations by those names are

British law. In fact, the entire two paragraphs quoted by Plaintiff are from the Personal Protective Equipment at Work Regulations 1992. This Act is therefore irrelevant to any claim and clearly does not convey jurisdiction on this Court.[1]

For the reasons stated above, the undersigned United States Magistrate Judge finds this action must be dismissed for lack of subject matter jurisdiction.

**2. Service of Process**

Having already determined this Court lacks subject matter jurisdiction, it is unnecessary to address Defendant's argument regarding improper service of process. For purposes of a Report and Recommendation to the District Judge, however, the undersigned finds Plaintiff has failed to properly effect service on any of the defendants.

A motion to dismiss for insufficient service of process is permitted by Federal Rule of Civil Procedure 12(b)(5). Rule 4(e) provides:

> Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>     (A) delivering a copy of the summons and of the complaint to the individual personally;
>
>     (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
>     (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

---

[1] www.legislation.gov.uk (Accessed September 17, 2013).

Rule 4(d)(1) of the West Virginia Rules of Civil Procedure provides for service on a party by:

(A) Delivering a copy of the summons and complaint to the individual personally;

(B) Delivering a copy of the summons and complaint at the individual's dwelling place or abode to a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purport of the summons and complaint; or

(C) Delivering a copy of the summons and complaint to an agent or attorney-in-fact authorized by appointment or statute to receive or accept service of the summons and complaint on the individual's behalf; or

(D) The clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee; or

(E) The clerk sending a copy of the summons and complaint by first class mail, postage prepaid, to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to Form 14 and a return envelope, postage prepaid, addressed to the clerk.

Service of Process on a corporation, partnership or association is effected pursuant to Fed. R. Civ. P. 4(h):

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and - - if the agent is one authorized by statute and the statute so requires - - by also mailing a copy of each to the defendant.

The Court's Roseboro Notice to Plaintiff set out Defendants' claim of improper service. Plaintiff does not dispute that he served all the defendants himself by certified mail. Instead of

13

properly serving the defendants after receiving Defendants' motion which sets out in detail how to effect service, Plaintiff explains why he did not do so. In his Response, Plaintiff states: "Service on individually named defendants including Ryan Environmental LLC was done by certified mail because of Defendant Clayton Rice's threatening tone in his email." The allegedly threatening email is:

> Sal,
>
> > I appreciate you reaching out, but given your threatening letters, neither Jim or I see the necessity to meet with you. Your relationship with Ryan was terminated for cause, which we discussed with you on your last day with Ryan. I respectfully request you refrain from contacting any employee at Ryan Environmental, LLC concerning business matters and legal threats.

The Court does not see any threat contained in this email that would excuse improper service. More importantly, the summonses could still have been properly served by mail by the clerk. Plaintiff also argues that the certified mailings required a signed receipt, so the person who signed the certified mail receipts must be an authorized agent. This argument is meritless and frivolous.

There is simply no reason for Plaintiff's failure to properly effect service on the defendants, especially after he was made aware of the issue by both the defendants and the Court.

Although not necessary to a decision in this matter, the undersigned does find Plaintiff failed to effect service on the defendants.

**3. Other Motions**

In Plaintiff's Complaint he asks for a cease and desist order. In his Response to the Motion to Dismiss he requests a Restraining Order. On August 21, 2013, Plaintiff filed a Motion for

Summary Judgment [DE 49]. The undersigned having found this Court has no subject-matter jurisdiction, the Court cannot consider these requests and Motion.

## IV. Recommended Decision

In accord with the reasons herein stated, the undersigned United Sates Magistrate Judge respectfully recommends that "Defendant's Motion to Dismiss" [Docket Entry 37] be **GRANTED** and Plaintiff's "Motion for Summary Judgment on Pleadings" [Docket Entry 49] be **DENIED**, and this case be dismissed.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address, and to counsel of record by electronic means.

Respectfully submitted this 19th day of September, 2013.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE